**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**TODD J. LLOYD,**

**Plaintiff,**

v.                                                                        **CASE NO. 23-3210-JWL**

**PAUL S. MCCAUSLAND,**

**Defendant.**

**MEMORANDUM AND ORDER**

Plaintiff and state prisoner Todd J. Lloyd filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) The Court reviewed the complaint and identified certain deficiencies that left the complaint subject to dismissal in its entirety. Thus, on September 19, 2023, the Court issued a memorandum and order (M&O) explaining, among other things, that even liberally construing the complaint, it failed to allege sufficient specific facts to state a plausible claim that Defendant Paul S. McCausland acted "under color of state law." (Doc. 6, p. 4-7.) Specifically, although Plaintiff relied upon a theory that Defendant had conspired with State actors to deprive Plaintiff of his constitutional rights, the complaint neither alleged sufficient facts to show an agreement between Defendant and any state actor to deprive Plaintiff of his constitutional rights nor alleged sufficiently specific facts showing concerted action by Defendant to further that agreement. *Id.* The M&O granted Plaintiff time in which to file an amended complaint that alleged sufficient facts to support a plausible claim that Defendant acted under color of state law. *Id.* at 7, 10.

The matter comes now before the Court on Plaintiff's amended complaint (Doc. 9) and his motion for extension of time to pay the filing fee for this action (Doc. 10). The motion for extension of time will be granted. The Court has reviewed the amended complaint and, as explained below,

1

concludes that like the initial complaint, it fails to allege sufficient facts to support a plausible claim that Defendant acted under color of state law. The Court further concludes that allowing time for Plaintiff to further amend the complaint would be futile. Thus, the Court will dismiss this matter without prejudice for failure to state a claim on which relief can be granted.

## I.      Nature of the Matter before the Court

The events underlying this federal civil rights action began with Plaintiff's arrest and criminal prosecution in Reno County, Kansas in 2014. *See* online records of Reno County, Kansas district court, *State v. Lloyd*, Case No. 2014-CR-000313. The criminal case was prosecuted by then-Reno County Attorney Keith Schroeder, who is now a state district judge, and was presided over by Kansas District Judge Trish Rose. *Id.* Plaintiff alleges that Schroeder "master-minded" a conspiracy to convict Plaintiff in the criminal case and, in doing so, committed may illegal acts. (Doc. 9, p. 10.)

Specifically, Plaintiff alleges that (1) he was illegally arrested; (2) the county lacked jurisdiction to prosecute him; (3) Schroeder failed to investigate and verify the evidence against Plaintiff; (4) Schroeder prosecuted Plaintiff without a reasonable belief of his guilt and used illegally obtained evidence to do so; (5) Schroeder made statements during the preliminary hearing that had no evidentiary basis; (6) Schroeder and Judge Rose erroneously refused a request by Plaintiff's trial counsel for their recusal because of a federal civil lawsuit Plaintiff had filed against them; and (7) Schroeder was unconstitutionally discriminatory during the jury selection phase of the trial, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). (Doc. 9, p. 6, 8-10.) In 2014, a jury convicted Plaintiff of two counts of kidnapping, and he was sentenced to 221 months in prison. *See State v. Lloyd*, 2016 WL 6568746, *1-2 (Kan. Ct. App. Nov. 4, 2016), *rev. denied* July 31, 2017. Plaintiff appealed his convictions, but in November 2016, the Kansas Court of Appeals

(KCOA) affirmed and, in July 2017, the Kansas Supreme Court (KSC) denied his petition for review. *See id.*

In April 2018, Plaintiff filed in Reno County a motion under K.S.A. 60-1507 seeking state habeas relief from the 2014 convictions. *See* online records of Reno County, Kansas district court, *Lloyd v. State*, Case No. 2018-CV-000135. Judge Rose is presiding over the K.S.A. 60-1507 action, which appears to be ongoing at the present time, and Thomas Stanton is the Reno County Attorney who represents the State therein. Counsel was appointed to represent Plaintiff, but court records reflect that the first eight or nine attorneys appointed later were allowed to withdraw based on conflicts with Plaintiff. Attorney Paul S. McCausland—the sole defendant to the federal civil rights action  now before this Court—was then appointed to represent Plaintiff in the K.S.A. 60-1507 proceedings. *See id.*; (Doc. 9, p. 1-2).

As the factual background for the amended complaint, Plaintiff alleges that Defendant conspired with Judge Rose, Schroeder, and Stanton to sabotage and discredit Plaintiff's position in the K.S.A. 60-1507 proceedings so that the 2014 criminal convictions will stand, Plaintiff will remain incarcerated, and illegal actions taken by Schroeder while prosecuting the criminal case will remain hidden. *Id.* at 2-3, 5, 9, 11, 13. In support of his argument, Plaintiff alleges that Defendant knew that Schroeder "outright lied" about the basis for striking the juror at the center of the *Batson* issue but Defendant "attempted to undermine and misconstrue Schroeder's lie" and "completely refused to expose this discrimination." *Id.* at 6, 12. Plaintiff explains:

> [D]uring my trial Schroeder identified the only African-American as being a black female but denied knowing what her name was as if he were all-of-a sudden unaware of ever striking her. He did this thinking it would be facially valid. However, now in his Response to my K.S.A. 60-1507 motion he states there was an alleged black juror whom the State could not confirm was black. McCausland wrote me a letter attempting to conform his argument to Schroeder's stating we would need to point on how he was lying when he stated he did not remember a black lady on the jury. As I stated above, Schroeder identified the only African-

American as being a black female but denied knowing what her name was at trial. McCausland so attempted to misconstrue Schroeder's lie to he was dissembling, which is not the same thing. Any attorney who isn't attempting to sabotage his client's case would exploit a D.A. for lying to the fullest extent.

*Id.* at 13-14 (all errors in original).

Plaintiff also points to an email exchange as evidence that Defendant "intentionally attempted to discredit the issues in [Plaintiff's] 1507 motion." *Id.* at 6. Plaintiff contends that in a December 30, 2022 email he wrote to Defendant, he explained how Judge Rose (1) at a pretrial motion hearing in the criminal matter "had waived [Plaintiff's] constitutional right to assert a mental defect defense," (2) had "restricted [Plaintiff's trial counsel] from questioning the alleged victim" and overruled trial counsel's objection to the restriction, and (3) had denied Plaintiff's request for a voluntary intoxication jury instruction. *Id.* at 12. In the email, Plaintiff asked Defendant to read the amended K.S.A. 60-1507 petition, which identified parts of the transcripts he believed contained evidence that supported his claims. *Id.*

On January 2, 2023, Defendant sent Plaintiff an email stating that he had looked at the transcript from the pretrial motion hearing and it showed that Judge Rose had asked whether Plaintiff was waiving his rights and both trial counsel and Plaintiff personally answered yes. *Id.* at 12-13. Plaintiff advises this Court that this is an inaccurate reading of the transcript. According to Plaintiff, when he replied affirmatively, he was responding to something other than the question about waiver. Plaintiff asserts that Defendant misconstrued the transcript in an attempt to "manipulate the facts of the records" to discredit the claims Plaintiff has raised in the K.S.A. 60-1507 proceeding. *Id.* at 13.

After Plaintiff "caught" Defendant trying to undermine his position, he filed a petition for writ of mandamus with the Kansas Supreme Court seeking an investigation of the situation. *Id.* at 10-11. Before the Kansas Supreme Court ruled on the petition, however, Judge Rose held a hearing

on February 3, 2023, at which Defendant falsely accused Plaintiff on the record of asking Defendant "to give [Plaintiff] assistance not permitted by the Rules of Professional Conduct and/or other laws." *Id.* at 6, 11. Plaintiff contends that Judge Rose conspired with Defendant and allowed him to lie about Plaintiff without going into any detail on the record. *Id.* at 11. Stanton's words and actions at that same hearing, Plaintiff alleges, "prove[]" that Stanton intended to further the conspiracy against Plaintiff. *Id.* at 7. Judge Rose, with the assistance of Stanton, "corruptibly relieved" Defendant of his duty to represent Plaintiff. *Id.* at 7, 11.

Plaintiff contends that absent the conspiracy against him and the overt acts taken in furtherance thereof, he would have been successful in the K.S.A. 60-1507 proceeding and would have regained his freedom. *Id.* at 6. Thus, Plaintiff reasons, Defendant's actions have deprived him of his right to effective assistance of counsel during his K.S.A. 60-1507 proceeding, as well as his "federal rights to life and liberty." *Id.* at 6, 10. In the sole count of the amended complaint, Plaintiff alleges the violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution, based on the facts detailed above. *Id.* at 4. As relief, he seeks $130,000.00 in punitive damages and $65,000 per year for the two additional years he has been wrongfully incarcerated due to Defendant's actions. *Id.* at 16.

## II.   Screening Standards

Because Plaintiff is a prisoner, the Court is required by statute to screen his amended complaint and to dismiss it or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). During this screening, the Court liberally construes the pro se amended complaint and holds it to "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts

all well-pleaded allegations in the amended complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's [amended] complaint or construct a legal theory on plaintiff's behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted.)

The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 570).

## III.    Discussion

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). In the September 19, 2023 M&O, this Court explained:

6

The United States Supreme Court has held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 324 (1981). "[A] person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 317-18 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). The role of a public defender is adversarial to the State and the traditional duties of a public defender in a criminal proceeding are not considered actions taken under color of state law. *Id.* at 321, 324-25. Thus, § 1983 claims against one's public defender based on performance of a public defender's "traditional functions as counsel to a defendant in a criminal proceeding . . . must be dismissed." *Id.* at 325.

Although Defendant in this matter is not acting as defense counsel in criminal proceedings but as court-appointed plaintiff's counsel in postconviction habeas proceedings, the same rationale applies.

. . . .

In his complaint, Plaintiff accurately points out that "[a]n otherwise private person acts 'under color of' state law when engaged in a conspiracy with State Officials to deprive another of federal rights." (Doc. 1, p. 1.) "[A] 'sufficient claim of a conspiracy between a private lawyer and state actors . . . would support the allegation that the private lawyer acted under color of state law.'" *Bledsoe v. Jefferson Cnty, Kan.*, 275 F. Supp. 3d 1240, 1252 (D. Kan. Aug. 4, 2017) (citations omitted). "'Conclusory allegations of conspiracy[, however,] are insufficient to state a valid § 1983 claim.'" *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022).

To state a § 1983 conspiracy claim, a plaintiff must "allege 'specific facts showing an agreement and concerted action among defendants,'—an 'agreement upon a common, unconstitutional goal,' and 'concerted action' taken 'to advance that goal.'" *Id.* (citations omitted). Plaintiff need not allege an express agreement to join the conspiracy; "'a defendant's assent can be inferred from acts furthering the conspiracy's purpose.'" *Id.* (citations omitted). And although "'[t]he participants in the conspiracy must share the general conspiratorial objective,' 'they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result.'" *Id.* (citations omitted).

(Doc. 6, p. 5-6.)

The amended complaint now before the Court includes far more detail than the original complaint did about the actions on which Plaintiff bases his contention that Defendant (1) agreed with state officials to violate his constitutional rights and (2) took concerted action to advance that

goal. But even taking all of the facts pled in the amended complaint as true, it still fails to support

a plausible conclusion that Defendant was acting under color of state law.

As noted above, Plaintiff asserts a conspiracy to ensure the failure of his K.S.A. 60-1507

petition in order to protect the validity of his criminal conviction, to cover up illegal actions by

Schroeder and Judge Rose, and to keep Plaintiff incarcerated. He attempts to show Defendant's

assent to and participation in the conspiracy by pointing to three events in particular: (1)

Defendant's failure to pursue in the K.S.A. 60-1507 proceedings the argument that Schroeder lied

about the circumstances of his striking the juror at the center of the *Batson* challenge; (2) the email

exchange detailed above regarding the understanding of transcripts from the criminal case; and (3)

the events of the February 2023 hearing.[1]

But even under the favorable standard of review appropriate during this initial screening

phase of these proceedings, these events do not support a plausible inference that Defendant agreed

to undermine the K.S.A. 60-1507 proceeding and violate Plaintiff's constitutional rights or that

Defendant took action to advance that goal. Although Plaintiff has plausibly alleged that Defendant

took actions with which Plaintiff disagreed, Plaintiff has not plausibly alleged that Defendant did

so as a willful participant in a conspiracy with a State agent or agents. Simply put, not every

disagreement between counsel and client over the interpretation of transcripts or which claims

should be pursued plausibly implies that counsel is engaged in a conspiracy to undermine the

related case.

For example, in an effort to show Defendant's agreement to and participation in a

conspiracy, Plaintiff contends that he informed Defendant of Schroeder's lies regarding the *Batson*

---

[1] Plaintiff advises that there are "recorded phone calls" that show Defendant's "attempts to discredit and undermine the[] issues" in the K.S.A. 60-1507 proceedings during his representation of Plaintiff, but he does not provide any further information about the content of those phone calls. (Doc. 9, p. 6.)

challenge. Plaintiff then reasons that "[a]ny attorney, who isn't attempting to sabotage his client's case, would exploit a D.A. for lying to the fullest extent. [*sic*]" (Doc. 9, p. 14.) But this reasoning ignores that Defendant apparently told Plaintiff that he did not see the statement in question as a lie; the amended complaint also states that Defendant "attempted to misconstrue Schroeder's lie to he was dissembling [*sic*]." *Id.* Thus, Defendant's reluctance to push the issue of Schroeder lying was not necessarily indicative of a wish to sabotage Plaintiff's success in the K.S.A. 60-1507 proceeding. It could have been because Defendant did not believe that Schroeder had lied. Therefore, although it is *conceivable* that Defendant was motivated by a desire to sabotage the K.S.A. 60-1507 proceedings, it is not *plausible*. *See Smith*, 561 F.3d at 1098; *Robbins*, 519 F.3d at 1247 (citing *Twombly*, 550 U.S. at 570).

Similarly, even taking as true the allegation that Defendant lied on the record in February 2023 when he stated that Plaintiff asked him to render illegal or unethical assistance, that lie does not make plausible the inference that Defendant was acting as part of a conspiracy. Plaintiff alleges that Defendant lied in order to prolong the K.S.A. 60-1507 proceedings and "further deprive [Plaintiff] of life and liberty," but the amended complaint includes no alleged facts that support this assertion of Defendant's intent. (*See* Doc. 9, p. 3.) Conclusory allegations of a conspiratorial motivation without supporting factual averments are insufficient. *See Hall*, 935 F.2d at 1110.

As explained above, the amended complaint does not plead sufficient facts to support a plausible inference that Defendant and a state actor agreed to deprive Plaintiff of his constitutional rights, nor does it allege sufficient facts to support a plausible inference that the "overt acts" identified by Defendant were motivated by or related to furthering the conspiracy's goal. Thus, the amended complaint, like the initial complaint, fails to state a plausible claim that the Defendant in this action was acting under the color of state law.

9

Generally, leave to amend a complaint "shall be freely given when justice so requires." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). Here, however, the M&O clearly explained to Plaintiff what is required to show that appointed counsel, despite acting within the traditional functions of that role, was engaged in a conspiracy with a state actor and thus was acting under the color of state law for purposes of liability under § 1983. (Doc. 6, p. 6.) The M&O further explained to Plaintiff that the initial complaint failed to allege sufficient facts to make the required showing and allowed time for Plaintiff to file an amended complaint that cured this deficiency. *Id.* at 6-7. Because this deficiency remains in the amended complaint, the Court declines to allow Plaintiff the opportunity to further amend his complaint. *See Jensen v. West Jordan City*, 968 F.3d 1187, 1202 (10th Cir. 2020) (explaining that refusing leave to amend is justified when there is "'failure to cure deficiencies by amendments previously allowed'"). Rather, this matter will be dismissed without prejudice for failure to state a claim on which relief can be granted.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for extension of time to pay filing fee (Doc. 10) is **granted.** Plaintiff remains obligated to pay the entire $350.00 filing fee.

**IT IS FURTHER ORDERED** that this matter is **dismissed without prejudice** for failure to state a claim on which relief can be granted.

**IT IS SO ORDERED.**

DATED:  This 20th day of October, 2023, at Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge

10